UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> ALVIN WRIGHT, <br><br> Defendant. | Case No. 1:72-cr-00802 (TNM) |

## MEMORANDUM ORDER

Alvin Wright is serving a 320-month sentence for armed robbery, burglary, and shooting at a police officer. He resides at Federal Correctional Institute ("FCI") Otisville in New York. Wright seeks compassionate release given his decades of incarceration and debilitating health conditions. The Government does not oppose Wright's release, but it requests that certain conditions attach. Given the Government's position, the Court will grant Wright's motion with the conditions requested by the Government.

### I.

Wright pled guilty in 1972 to Armed Robbery, Burglary, and Assault on a Member of the Police Force with a Deadly Weapon. Def.'s Mot. to Reduce Sentence Pursuant to D.C. Code § 24-403.04 ("Def.'s Mot.") Ex. 1 at 2, ECF No. 3-1.[1] A judge of this district sentenced him to an indeterminate term of 15 to 45 years. *Id.*

Wright's criminal conduct did not stop with incarceration. Here is an inexhaustive list: *First*, Wright assaulted a correctional officer who was searching his cell. Def.'s Mot. Ex. 2 at 3, ECF No. 3-2. *Second*, he participated in an escape attempt in which he took prison staff hostage

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system, and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

and a fellow inmate died.  Gov't Resp. to Def.'s Mot. to Reduce Sentence ("Gov't Resp.") Ex. 1 at 3, ECF No. 6-1.  *Third*, Wright and another prisoner "assaulted an inmate by inflicting 14 stab wounds to his body." *Id.* at 5.  *Fourth*, Wright faced murder charges after he "was observed by several inmates conveying a knife about twelve inches long with a handle" on the day "another inmate was stabbed to death." *Id.* at 4.  But that charge "ended in a hung jury." *Id.* (cleaned up).

Nonetheless, Wright was paroled in 1993.  A few years later, he and an accomplice tried to rob a Kentucky Fried Chicken restaurant in Northern Virginia, shooting at officers who responded to the scene.  Def.'s Mot. Ex. 3 at 1, ECF No. 3-3.  Wright received a 396-month sentence in Virginia state court for robbery, illegal gun possession, and attempted malicious shooting of a police officer.  *Id.*  He racked up several disciplinary infractions during his incarceration in Virginia, too.  Specifically, Wright was found guilty of disobeying orders, simple assault, and testing positive for THC. *Id.* at 2–3 (cleaned up).

Wright left state custody on geriatric parole in 2018, returning to federal custody to address the violation of his 1993 parole.  Gov't Resp. Ex. 4 at 1, ECF No. 6-4.  The U.S. Parole Commission revoked Wright's parole and imposed a 320-month sentence with a presumptive parole date in 2023.  Gov't Resp. Ex. 2 at 1, ECF No. 6-2.  The hearing examiner concluded that Wright was more dangerous than his criminal history reflected and "demonstrated disregard for human dignity" by shooting at a police car during his 1993 arrest, which occurred when he was in his mid-forties. *Id.* at 2.

Wright is serving his sentence at FCI Otisville.  He seeks compassionate release under D.C. Code § 24-403.04(a) and argues that release is proper given his various medical conditions and extensive rehabilitation.  Def.'s Mot. at 10–36.  The Government does not oppose Wright's motion, but it requests that the Court attach three conditions to Wright's release: (1) that he serve

five years of supervised release; (2) that he participate in drug aftercare; and (3) that his release occur three calendar days from the date of this Order.  Gov't Resp. at 4–5.

## II.

Both parties agree that the Court should consider Wright's motion under D.C.'s COVID-19 Response Supplemental Emergency Amendment Act of 2020, D.C. Code § 24-403.04.  *See* Def.'s Mot. at 10–11; Gov't Resp. at 2.  This is the proper standard because Wright's 1972 convictions were all D.C. law offenses.  *See United States v. Cunningham*, 833 Fed. Appx. 487, 488 (D.C. Cir. 2021) (per curiam) (affirming district court's consideration and denial of compassionate release motion under D.C. Code § 24–403.04 where defendant's crimes were D.C. Code offenses).

Section 24-403.04 permits courts to modify a D.C. Code offender's prison term in certain enumerated circumstances, depending on the offender's age, medical conditions, and time spent incarcerated.[2]  As relevant here, eligibility extends to offenders "60 years of age or older" who have "served at least 20 years in prison."  D.C. Code § 24-403.04(a)(1).[3]  Even when a defendant

---

[2] The relevant portion of D.C. Code § 24-403.04 reads:

> (a) Notwithstanding any other provision of law, the court may modify a term of imprisonment imposed upon a defendant if it determines the defendant is not a danger to the safety of any other person or the community, pursuant to the factors to be considered in 18 U.S.C. §§ 3142(g) and 3553(a) and evidence of the defendant's rehabilitation while incarcerated, and:
>> (1) The defendant has a terminal illness, which means a disease or condition with an end-of-life trajectory;
>> (2) The defendant is 60 years of age or older and has served at least 20 years in prison; or
>> (3) Other extraordinary and compelling reasons warrant such a modification . . . .

[3] Wright quotes an outdated version of D.C. Code § 24-403.04 in his motion.  *See* Def.'s Mot. at 12.  The Government concedes that Wright is eligible for compassionate release under the current version of the statute and under a different subsection.  Gov't Resp. at 3.  The Court applies the operative version of the statute.

is eligible, the reviewing court must determine that the offender is no longer a danger to the community given "the factors to be considered in 18 U.S.C. §§ 3142(g) and 3553(a) and evidence of the defendant's rehabilitation while incarcerated." *Id.* § 24-403.04(a). The defendant bears the burden of establishing by a preponderance of the evidence that he is not dangerous. *Bailey v. United States*, 251 A.3d 724, 729 (D.C. 2021) (per curiam).

### III.

Wright argues that his motion should be granted under D.C. Code § 24-403.04(a)(3) because his various medical ailments present extraordinary and compelling reasons meriting release. Def.'s Mot. at 14–22. But he has another, easier path to freedom. As the Government acknowledges, *see* Gov't Resp. at 3, Wright is eligible for compassionate release under subsection (a)(2) of the statute. Wright is now 68 years old, and he served at least 20 years in prison for D.C. Code offenses during his incarceration from 1972 to 1993.[4] The Court need not address Wright's arguments relating to subsection (a)(3) given his eligibility under subsection (a)(2).

Wright's release thus hinges on whether he is a "danger to the safety of any other person or the community" given the factors described in 18 U.S.C. §§ 3142(g) and 3553(a). D.C. Code § 24-403.04(a); *see Bailey*, 251 A.3d at 732 (holding that current and future dangerousness is sole consideration for compassionate release once inmate meets statutory eligibility requirements). Although there is substantial overlap, the factors in § 3553(a) are more relevant here because § 3142(g) relates to pretrial bond hearings. *See* 18 U.S.C. § 3142(g) (including "the

---

[4] When analyzing Wright's eligibility, the Court considers only his incarceration in federal prison for his original D.C. Code offenses, not the time he served in Virginia for his later state offenses. To do otherwise would allow an elderly repeat offender to be eligible for release immediately after sentencing because of long periods of incarceration in prior cases.

4

weight of the evidence against the person"). Section 3553(a) directs judges to consider the ends of punishment, such as the need "to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D). But these factors are relevant "only insofar as they inform the determination of a prisoner's present or future dangerousness." *Bailey*, 251 A.3d at 732; *accord Griffin v. United States*, 251 A.3d 722, 724 (D.C. 2021).

Wright "acknowledges the serious nature of his offenses of conviction," Def.'s Mot. at 25, and rightly so. Wright shot at police officers twice, years apart. *Id.* Ex. 3 at 2; Gov't Resp. Ex. 1 at 3. Though no one died, that was not the case during Wright's attempted escape from prison, which left a fellow inmate dead. Gov't Resp. Ex. 1 at 3. With an accomplice Wright also stabbed a different inmate over a dozen times, *id.* at 5, and he may have evaded prosecution for a jailhouse murder, *id.* at 4.

But the Court considers, as it must, Wright's current and future dangerousness, as informed by his criminal conduct and rehabilitation since. *See* D.C. Code § 24-403.04; *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) ("evidence of postsentencing rehabilitation may plainly be relevant to the history and characteristics of the defendant" under § 3553(a)); *United States v. Douglas*, No. CR 10-171-4 (JDB), 2021 WL 214563, *7 (D.D.C. Jan. 21, 2021) ("Defendants who provide compelling evidence of their rehabilitation have been granted compassionate release notwithstanding gruesome offenses committed decades past.").

The Court ultimately agrees that Wright has shown diminished dangerousness. *See* Def.'s Mot. at 25–30; Gov't Resp. at 4.

*First*, Wright has maintained good behavior in recent years. He has incurred no disciplinary infractions since returning to federal custody at FCI Otisville. Indeed, it has been over 19 years since Wright's last documented infraction. *See* Def.'s Mot. at 9; *id.* Ex. 3 at 4, ECF No. 3-3. Wright has apparently learned to follow the rules of his facility, and this bodes well for his compliance upon release. *See Douglas*, 2021 WL 214563, at *6–7 (noting that lack of recent disciplinary infractions exhibited defendant's rehabilitation).

*Second*, Wright has undertaken extensive educational and vocational training while incarcerated to become a caregiver for other prisoners. Def.'s Mot. at 26; *id.* Exs. 9–12. His efforts to assist elderly prisoners with access to meals, hygienic needs, medical treatment, and companionship suggest a newfound empathy and commitment to the welfare of others. Def.'s Mot. at 27. These endeavors supplement the drug treatment and academic programs he pursued for his own sake. *Id.* at 26. The Court commends Wright's more recent focus on bettering himself and fellow inmates, and these pursuits weigh in his favor. *See United States v. Suggs*, No. CR 07-0152-01 (ESH), 2020 WL 5816485, at *2 (D.D.C. Sept. 29, 2020) (acknowledging that defendant "tak[ing] advantage of courses and programs during his years of incarceration" supported granting compassionate release) (cleaned up); *United States v. Hicks*, No. CR 93-97-2 (BAH), 2021 WL 1634692, at *10 (D.D.C. Apr. 27, 2021) (explaining that evidence of strong performance in academic and vocational programs may support inference of rehabilitation for purposes of compassionate release).

*Third*, Wright is at a lower risk of recidivism given his advanced age, severe medical impairments, and a comprehensive support plan upon release. *See Douglas*, 2021 WL 214563, at

6

\*9 ("at age fifty, [the defendant] is statistically less likely to reoffend than a younger person would be upon release."). Requiring use of a wheelchair, Wright is largely immobilized, and his ability to perform basic human functions is severely impaired. Def.'s Mot. at 15–16, 21–22; *id.* Exs. 6–8. More, Wright has submitted a detailed plan on how he will secure housing, medical care, and financial assistance from family members. *Id*. at 30–32; *see also id.* Exs. 13–16. Wright has apparently maintained close connections with his family, particularly the sister he plans to live with upon release. *Id.* at 31–32. These connections give the Court confidence Wright will have a support system to help him stay healthy and out of legal trouble. *See Douglas*, 2021 WL 214563 at \*9 ("The availability of economic and emotional support . . . mitigates any risk that [the defendant] might revert to his old ways and pose a danger to society.").

*Finally*, the Court relies on the Government's decision not to oppose release. Gov't Resp. at 1. To be sure, earlier this year the U.S. Parole Commission reaffirmed that Wright's offenses and recidivism supported his continued incarceration. *See* Gov't Resp. Ex. 3 at 6, ECF No. 6-3. But like the Bureau of Prisons which currently incarcerates Wright, the U.S. Parole Commission is part of the Department of Justice, and the Department's position today is that Wright merits release. Gov't Resp. at 4. Had the Government opposed, the release decision would have been a much closer call. But the Government grants that Wright "has carried his burden under a consideration of the statutory factors in 18 U.S.C. § 3142(g) and § 3553(a)." Gov't Resp. at 4; *cf. United States v. Davis*, No. CR PJM 00-424-2, 2020 WL 1083158, at \*3 (D. Md. Mar. 5, 2020) (granting defendant's motion for compassionate release while noting Government's non-opposition). The Executive Branch plays a unique and important role in the

criminal justice system. Its determination that a defendant should be released deserves deference.

The Court has reflected on the applicable statutory sentencing factors, particularly "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). While troubled by Wright's decades-old offenses, the Court is confident that none of these factors require Wright's continued incarceration.

The Court will, though, impose conditions on Wright's release to facilitate his reentry into society and to safeguard against any lingering risk of recidivism. *Cf. Griffin,* 251 A.3d at 723 (affirming denial of release for elderly wheelchair-bound murderer given his ongoing dangerousness to the community). Wright must serve a five-year term of supervised release. As part of that supervision, he must participate in drug aftercare directed by his supervising officer. Finally, Wright's release will be delayed for three calendar days to ensure that Bureau of Prisons personnel have sufficient time to process the release. *See* Gov't Resp. at 4–5. This adjusted sentence will be sufficient, but not greater than necessary, to achieve the statutory objectives of sentencing.

### IV.

For all these reasons, it is hereby

**ORDERED** that Defendant's Motion for Compassionate Release is GRANTED; it is further

**ORDERED** that Defendant's original sentence be suspended as to all but time served; it is further

**ORDERED** that Defendant serve a five-year term of supervised release; it is further

**ORDERED** that Defendant must participate in drug aftercare at the direction of the U.S. Probation Office; and it is further

**ORDERED** that Defendant shall be released three days from today.

Dated: July 19, 2021                                             TREVOR N. McFADDEN, U.S.D.J.